## THE KENTRA.

(District Court, E. D. New York. December 15, 1922.)

1. Seamen ☞7—Articles held not to permit master to take vessel to any port that he chose.

Articles providing for a voyage "from the port of New York to Vancouver, B. C., via Panama Canal and such other ports and places in any part of the world as the master may direct, and back to New York, to a final port of discharge in the United States for a term not exceeding 12 calendar months," did not permit the master to take his vessel to any part of the world that he chose and did not anticipate a trip to Wales within the war zone.

2. Seamen ☞7—Voyage exposing seaman to greater danger than expected a breach of articles.

A seaman may treat as a breach of articles a voyage which would expose him to a greater danger than he had reason to expect.

Libel by John Marjama against the steamship Kentra, the United States Steel Products Company, and the Isthmian Steamship Lines. Decree for libelant.

Silas B. Axtell, of New York City, for libelant.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (L. De Grove Potter, and Vernon S. Jones, both of New York City, of counsel), for respondent.

GARVIN, District Judge. This libel has been filed by a seaman of the steamship Kentra to recover wages for one month, together with transportation and maintenance until his arrival at New York from Balboa, on the Pacific side of Panama Canal; libelant also asks for damages for waiting time and for an alleged false arrest. At the trial the claim for damages for false imprisonment was disallowed, and libelant asks that it be disregarded.

Marjama, the libelant, signed shipping articles on or about June 19, 1915, at New York, as carpenter on the Kentra at $40 per month, which articles provided for a voyage "from the port of New York to Vancouver, B. C., via Panama Canal and such other ports and places in any part of the world as the master may direct, and back to New York, to a final port of discharge in the United States for a term not exceeding 12 calendar months."

[1] The vessel proceeded to Victoria, via the Panama Canal. Beginning her return trip, she proceeded to Balboa, where it was decided to take her around Cape Horn to Swansea, Wales. To this libelant demurred, and, having been paid over, has asserted the claims which are the subject of this suit, contending that there has been an unlawful discharge, because, by the shipping articles, it was never intended that the vessel was to go within the war zone, which a trip to Wales would involve. It is well settled that articles of this character do not permit a master to take his vessel to any part of the world that he chooses; but it is urged that, as in this case the Kentra had had a route which she followed from New York to the Pacific coast, then to Europe, and back to the United States, and that as libelant had originally signed aboard the vessel at Swansea, Wales, in 1914, he might expect a voyage of this character.

[2] It is clear, I think, that a seaman may treat as a breach of the articles a voyage which would expose him to a greater danger than he had reason to expect. The proposed trip to Wales was not fairly to be anticipated by the crew. Twenty-four of them, including two officers, of a total of 39, refused to proceed to Wales. (Melling Cross, page 13.) Melling did not answer yes or no to query:

"Didn't they tell you at that time [at Balboa] that the articles did not call for a voyage into the war zone?" (Melling Cross, page 8.)

Later he requested and received permission from the owners to offer the inducement of a 25 per cent. bonus to proceed through the war zone. (Melling Cross, page 12.) All vessels guaranteed this bonus to the crews for the additional risk they assumed. But Melling's first offer of a bonus arises at Balboa (Melling Cross, page 12), although his crew was engaged at New York and San Francisco. Swansea, Wales, brings about the entire issue, as it should. It was within the war zone, and hence perilous to both crew and owners. Swansea, or any port within the war zone, should have been set down in the articles, and if it had been understood that such a port would be visited the master should have had the authority to pay the war bonus when and where the contract was made. In the case at bar, it would be at New York. Because Marjama had signed up once before, for this same voyage, is an insufficient defense. Trade routes and sea lanes were disrupted by the war, and the submarines injected a new element for the consideration of seamen and shipowners. Marjama signed for this first voyage before the war broke out (Melling Cross, page 11); hence under an entirely different set of circumstances.

It follows, therefore, that this was a wrongful discharge and a breach of the contract.

There will be a decree for libelant.